**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**SANDRA K.,**

      **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 3:24-CV-00606**

**LELAND DUDEK,**
Acting Commissioner Of Social Security**,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered October 25, 2024 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Acting Commissioner's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 8, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for reversal and entry of an award for benefits or remand for further proceedings (ECF No. 8), **GRANT** the Commissioner's request to affirm the final decision (ECF No. 9); **AFFIRM** the final

decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on August 10, 2020 alleging disability beginning July 15, 2020 due to coronary artery disease, quadruple bypass surgery, neuroendocrine cancer, malignant carcinoid tumors "stage 3", anemia requiring iron/blood transfusions, meningioma brain tumor, thyroid nodule, chronic back and neck pain "ruptured/enlarged disc", and multiple inguinal hernias with surgery. (Tr. at 86, 255) Her claim was initially denied on February 5, 2021 and upon reconsideration on April 8, 2022 (Tr. at 86, 127-144, 146-155). Thereafter, the Plaintiff filed a written request for hearing on May 20, 2022 (Tr. at 86, 181-182).

An administrative hearing was held on August 22, 2023 before the Honorable Christina Hajjar, Administrative Law Judge ("ALJ") (Tr. at 106-126). On October 4, 2023, the ALJ entered an unfavorable decision (Tr. at 83-105). On August 26, 2024, the Appeals Council denied the Plaintiff's Request for Review (Tr. at 229-231), thus, the ALJ's decision became the final decision of the Commissioner (Tr. at 1-7).

On October 25, 2024, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 5) Subsequently, the Plaintiff filed her Brief in Support of Complaint (ECF No. 8); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 9), to which the Plaintiff filed her Reply Brief (ECF No. 10). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 55 years old as of the alleged onset date and therefore defined as a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 127) She has a high school education, and last worked on July 15, 2020 as a surgery scheduler/medical scribe. (Tr. at 255-256).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the

4

Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision

must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2025. (Tr. at 88, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity during the period from her alleged onset date of July 15, 2020. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: coronary artery disease (CAD) status post bypass surgery; chronic respiratory disorder; left hemidiaphragm paralysis; spine disorder; and obesity. (Tr. at 89, Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 91, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach overhead and handle, finger, and feel with the bilateral upper extremities; can have occasional exposure to extreme cold, extreme heat, noise, vibration, atmospheric conditions, and hazards such as moving machinery and unprotected heights; and can never climb ladders, ropes, or scaffolds.

(Tr. at 92-93, Finding No. 5)

At step four, the ALJ found the Plaintiff was capable of performing her past relevant work as a surgery scheduler. (Tr. at 98-99, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability from July 15, 2020 through the date of the decision. (Tr. at 99, Finding

No. 7)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff alleges that the ALJ erred by failing to include her mild mental limitations she determined at step two in her RFC assessment, or failed to explain why they were omitted. (ECF No. 8 at 2-5) Because the ALJ herself determined the Plaintiff had mild limitations in all four domains of mental functioning and did not address whether this impacted her ability to return to her past relevant work as a surgery scheduler and billing clerk, classified as semi-skilled work, therefore, this error warrants remand, a result endorsed by numerous courts nationwide, including the Tenth Circuit in Wells v. Colvin, 727 F.3d 1061, 1068-1071 (10th Cir. 2013) (Id. at 5-13). The ALJ also erred at the fourth step because the RFC limits the Plaintiff to frequent fingering, but the Plaintiff's past relevant work as a billing clerk requires constant fingering; the ALJ failed to resolve this apparent conflict pursuant to Social Security Ruling (SSR) 00-4p (Id. at 13-15). Additionally, because the Plaintiff's past relevant work as a surgery scheduler was a composite job, that is performing the duties of several different occupations, the ALJ was prohibited from finding that she was able to perform that job as generally performed under POMS DI 25005.020(B), 2011 WL 4753471 (Id. at 16-19). Because of these errors, the Plaintiff asks the Court to reverse and remand for an outright award of benefits, or for further administrative proceedings. (Id. at 20)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the second step and subsequent steps of the sequential evaluation process, including how the medical opinion evidence supported that conclusion. (ECF No. 9 at 8-12) The Commissioner observes that there were no proven mental limitations to account

for in the RFC, and the Plaintiff's claim that the ALJ did not consider or discuss the effect of her mental impairments on her ability to perform work-related activities is inconsistent with the written decision; importantly, the Fourth Circuit and courts within this Circuit, including this District[1], have routinely held that mild limitations in mental functioning does not require mental restrictions precluding work. (Id. at 11-15) Further, the ALJ appropriately found the Plaintiff could perform her past relevant work as a surgery scheduler as it is generally performed, as that position is not a composite job, which is clear from the vocational expert's testimony. (Id. at 15-17). Additionally,

---

[1] The Commissioner cites numerous cases wherein this Court determined non-severe mental impairments and mental limitations identified using the psychiatric review technique were not necessary to be included in the RFC or indicate work-related functional limitations: *See, e.g.*, *Wall v. Saul*, 2:20-CV-00460, 2021 WL 5225792, at *8 (S.D. W. Va. June 2, 2021), *report and recommendation adopted by* 2:20-CV-00460, 2021 WL 5230989 (S.D. W. Va. Nov. 9, 2021) ("Put simply, contrary to Claimant's assertion, mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment."); *Hedrick v. Saul*, 2:20-CV-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021), *report and recommendation adopted by* 2:20-CV-00449, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021) ("[T]there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work.") (quoting *Perry v. Colvin*, No. 2:15-CV- 01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016)); *see also Kenneth C. v. Kijakazi*, No. CV 22-2936-BAH, 2023 WL 5721641, at *4 (D. Md. Sept. 5, 2023) (approvingly citing caselaw finding that mild "paragraph B" findings will typically not translate to RFC limits); *See also Tammy R. v. Kijakazi*, 2023 WL 6122140, at *7 (S.D. W. Va. Aug. 31, 2023) (affirming where the ALJ explained at step two that the claimant's mental impairments were not severe and "did not result in work-related functional limitations, and, using the record evidence, explained why Claimant did not require mental restrictions in order to work"), *report and recommendation adopted by* 2023 WL 6130565 (S.D. W. Va. Sept. 19, 2023); *Carla D. v. v. O'Malley*, No. 5:22-CV-575, 2024 WL 1169423 (S.D. W. Va. Mar. 1, 2024), *report and recommendation adopted sub nom.*, No. 5:22-CV-00575, 2024 WL 1160317 (S.D. W. Va. Mar. 18, 2024) (ALJ explained why mild limitations in functional areas not warranted in the RFC and did not cause more than minimal limitation on claimant's ability to do work activities); *Lisa C. v. O'Malley*, No. 2:24-CV-00093, 2024 WL 3463851, at *8 (S.D. W. Va. July 2, 2024), *report and recommendation adopted by* 2024 WL 3461074 (S.D. W. Va. July 18, 2024) ("[T]his Court has on numerous occasions held that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment.") (collecting cases); *Wendy M. v. O'Malley*, No. 2:23-CV- 00240, 2024 WL 1189485, at *9 (S.D. W. Va. Feb. 29, 2024), *report and recommendation adopted by* 2024 WL 1179822 (S.D. W. Va. Mar. 19, 2024) ("Based on this evidence, the ALJ explained that Claimant's mental impairments allowed Claimant to perform work consistent with the RFC finding that included no specific limitations on mental activities"); *Terri M. v. O'Malley*, No. 3:23-CV-00769, 2024 WL 1843958, at *8 (S.D. W. Va. Apr. 10, 2024), *report and recommendation adopted by,* 2024 WL 1839482 (S.D. W. Va. Apr. 26, 2024) ("[T]he ALJ clearly addressed the Plaintiff's non-severe mental impairments when assessing her [residual functional capacity], though she addressed the relevant evidence at step two in her analysis").

while the Commissioner concedes that the vocational expert testified that the Plaintiff could not perform her past relevant work as a billing clerk, which the written decision appears to characterize this past work as a payroll clerk rather than billing typist which is how the vocational expert characterized the position, remand is still not warranted: under the Regulations and controlling jurisprudence, the ALJ need only identify one job existing in significant numbers in the national economy to support her findings, and she did – surgery scheduler (Id.). The Commissioner argues substantial evidence supports the final decision, and this Court should affirm. (Id. at 18)

In her reply, the Plaintiff reiterates her arguments that the ALJ never explained why she omitted the Plaintiff's mental functional limitations from the RFC or even how they did not prevent her from performing her prior work; the boilerplate following the psychiatric review technique does not provide any such explanation. (ECF No. 10 at 1-2) Because the Agency's own regulations mandate that an adjudicator explain their conclusions, the ALJ here could have easily explained why the Plaintiff's mild functional limitations from her non-severe mental impairments did not cause any work-related limitations, but she did not, which is exactly the situation this Court found in *Shank v. Saul*, No. 3:20-cv-00444, 2021 WL 2767063, at *8-9 (S.D.W. Va. Jun. 11, 2021), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. Jul 1, 2021). (Id. at 3-4) The Plaintiff again asserts that the surgery scheduler job is a composite job pursuant to SSA's own definition under SSR 82-61 when compared with the Plaintiff's testimony; it is the ALJ's obligation to reconcile the inconsistencies between the vocational expert's testimony with the DOT. (Id. at 5-6) The ALJ is not permitted to rely on vocational expert testimony that conflicts with SSA policy, and the record is not clear that the ALJ knew what constituted a composite job or how it would impact the outcome in this case, thus remand is appropriate. (Id. at 6-7)

**Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

<u>Plaintiff's Testimony:</u>

The Plaintiff testified that she had a part time job for which she would "do billing and posted payments" which mostly consisted of sitting down, except when she had to pull charts and filing; she estimated she had spent about 40% of the time standing and walking, though she worked an average of four to five hours an evening, and at times, an eight-hour day on the weekend. (Tr. at 112-113) She also worked at a clinic scheduling surgeries, which consisted of explaining the surgery to patients, obtain patients' consent, coordinate with the surgery, surgeon, preadmission and OR, for wheelchair bound patients, push them to her office for paperwork, to preadmission and to surgery, to the lab for any tests, and would have to go to surgeons if she had any questions about upcoming surgeries. (Tr. at 113-114) The Plaintiff estimated that daily she spent about 50% of her time moving around to different departments at that job; she mostly handled paperwork, but occasionally would have to take boxes of cleansers and things for patients prior to surgery that would weigh more than ten pounds. (Tr. at 115) She testified that 90% of the patients there were elderly would require someone to push them in their wheelchairs; she spent time talking with insurance companies on the phone as well. (Tr. at 115-116)

<u>Vocational Expert's Testimony:</u>

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings, which only concerns the RFC assessment as it relates to mental functioning limitations and the fourth step findings. As the medical evidence of record is not in dispute, the undersigned declines to reproduce same here.

The vocational expert noted that the DOT labels the Plaintiff's past relevant work as a surgery scheduler as a patient scheduler, which is classified as semi-skilled and sedentary exertional level; per the Plaintiff's testimony, the vocational expert testified that it would be in the medium exertional category due to pushing wheelchairs. (Tr. at 122-123) The vocational expert then classified the Plaintiff's other past relevant work as a billing clerk, which is also sedentary and semi-skilled, but it might have been light as the Plaintiff actually performed it. (Tr. at 123) The vocational expert further advised that the surgery/patient scheduler job is not a composite job because it was part of the Plaintiff's job duties to bring the patients back to her office. (Id.)

In response to the hypothetical scenario with limitations as outlined in the RFC finding, *supra*, the vocational expert testified that the Plaintiff could perform the past relevant work as a surgery/patient scheduler as generally performed pursuant to the DOT, but not as actually performed, and that the billing clerk job would not be available. (Tr. at 123-124)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

<u>Mental Limitations and the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See <u>Id</u>. § 404.1546(c); see also <u>Id</u>. § 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. <u>Id</u>. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

At the second step in the sequential evaluation process, the ALJ determined that the Plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere" and that the Plaintiff only

had a mild limitation[3] in all four broad areas of mental functioning. (Tr. at 89-91) In support of these findings, the ALJ relied on the Plaintiff's hearing testimony, her Function Report, treatment records, the psychological consultative report, and State agency psychological consultant opinion evidence. (Id.) As noted *supra*, none of this is in dispute.

In the ALJ's discussion of the relevant evidence for the RFC determination, the ALJ noted that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent primarily as they concerned her physical impairments, but also observed that "treatment notes do not indicate any further limitations. The claimant has received consistent treatment and tried numerous treatment modalities. She has consistently been compliant with treatment and appears invested in her physical and *mental* health improvement." (Tr. at 97)(emphasis added) The ALJ also considered the opinion evidence provided by the Plaintiff's treating physician, Dr. Theresa Simon, who determined that the Plaintiff had no mental health impairments, which the ALJ found unpersuasive because the medical evidence is consistent with a diagnosis of anxiety, but this impairment only caused mild limitations. (Tr. at 98) Ultimately, the ALJ found that "[b]ased on the foregoing . . . [the Plaintiff] has the above residual functional capacity assessment[.]" (Id.)

Regarding the Plaintiff's argument that the ALJ did not address why the mild mental functional limitations were not accommodated in the RFC, let alone include them pursuant to the ALJ's own findings, it is noted that this Circuit has also recognized " 'there is no rigid requirement

---

[3] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."

that the ALJ specifically refer to every piece of evidence in his decision[.]' " <u>Reid v. Commissioner of Social Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2006) (*per curiam*)); <u>see also Call v. Berryhill</u>, Civil Action No. 2:17- CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018) ("The Court finds the ALJ's summaries and explanations sufficiently display a consideration of all the evidence, including that cited by Plaintiff. While this evidence was not explicitly mentioned, the holding in <u>Reid</u> applies to the instant case and a failure to specifically mention a single CR scan which noted `mild soft tissue swelling' in a transcript of well over 800 pages does not constitute 'evidence to the contrary.' ") (Chambers, J.); see also <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

In this case, it is clear that the ALJ considered the Plaintiff's mental functional limitations, but more importantly, this Court has on numerous occasions held that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing <u>Mascio v.</u>

Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

Ultimately, following her review of the medical and other evidence before her, as noted *supra*, the ALJ determined that "[b]ased on the foregoing . . . [the Plaintiff] *has the above residual functional capacity assessment*[.]" (Tr. at 98)(*emphasis* added) This demonstrates that the ALJ considered the evidence related to the Plaintiff's mental impairments beyond step two of the sequential evaluation process, notwithstanding her "paragraph B" findings. In sum, the ALJ complied with her obligation under Section 404.1545(a) and SSR 96-8p, as she not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations in the four broad functional areas, but she also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the ALJ's analysis of the Plaintiff's mental limitations and

omitting same in the RFC assessment is supported by substantial evidence.

Step Four Findings:

As mentioned above, the ALJ determined at step four that the Plaintiff could perform her past relevant work as a surgery scheduler and as a billing clerk. (Tr. at 98-99, Finding No. 6) The parties do not dispute that the ALJ's written decision is erroneous to the extent that the Plaintiff remains capable of performing the duties of a billing clerk, based on the vocational expert's clear testimony that she could not with the limitation of frequent fingering. Notwithstanding this possible scrivener's error, the ALJ did find the Plaintiff remains capable of performing her past relevant work as a surgery scheduler, as it is generally performed, but not as the Plaintiff actually performed it. (Tr. at 99)

The Fourth Circuit has held "[a]lthough we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford, 734 F.3d at 296; see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." See, *Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions*, SSR 00-4p, 2000 WL 1898704, at *4. In short, it remains the exclusive duty of the ALJ to identify any conflicts in

the evidence and to resolve them. The parties disagree as to whether the Plaintiff's past relevant

work as a surgery scheduler is a "composite job": in response to the ALJ's question, the vocational

expert testified unequivocally that it is not. (Tr. at 123) The vocational expert also affirmed that

her testimony was consistent with the DOT. (Tr. at 125) The Plaintiff contends that the surgery

scheduler job is defined as a "composite" job:

### B. Determining if work was a composite job

> Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT.
> • The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.
> • If you determine that PRW was a composite job, you must explain why.
> • When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.
> • A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy."

See *Past Relevant Work (PRW) as the Claimant Performed It*, SSA POMS DI 25005.20, 2011 WL

4753471 (**bold** in original). The Plaintiff also argues that according to the DOT, this job is listed

as a hospital-admitting clerk, and described as follows:

> Interviews incoming patient or representative and enters information required for admission into computer: Interviews patient or representative to obtain and record name, address, age, religion, persons to notify in case of emergency, attending physician, and individual or insurance company responsible for payment of bill. Explains hospital regulations, such as visiting hours, payment of accounts, and schedule of charges. Escorts patient or arranges for escort to assigned room or ward. Enters patient admitting information into computer and routes printed copy to designated department. Obtains signed statement from patient to protect hospital's interests. May assign patient to room or ward. May compile data for occupancy and census records. May store patient's valuables. May receive payments on account.

See DICOT 205.362-018 (G.P.O.), 1991 WL 671710. Clearly, some of the duties listed here

include those that the Plaintiff testified to having to perform when she last worked as a surgery scheduler, however, the Plaintiff argues that the DOT's description for this job does not entail most of the duties the Plaintiff actually performed this past relevant work. Indeed, the Plaintiff contends that because her past work required her to perform the duties of "several different occupations on a daily basis", it is therefore a composite job. (See ECF No. 8 at 18) The Plaintiff offers no evidence for this contention, save her own opinion. It is notable that pursuant to SSR 82-61, an adjudicator has "three possible tests" for determining whether or not a claimant retains the capacity to perform her past relevant work – of significance here, the third test provides as follows:

> Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. **Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."**

See *TITLES II AND XVI: PAST RELEVANT WORK--THE PARTICULAR JOB OR THE OCCUPATION AS GENERALLY PERFORMED,* SSR 82-61, 1982 WL 31387, at *2 (*italics* in original)(**emphasis** added). Moreover, this Ruling provides that

> a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*

> 2. The functional demands and job duties of the occupation **as generally required**

by employers throughout the national economy.

Id. (*italics* in original)(**emphasis** added)

At bottom, the vocational expert specifically stated that the Plaintiff's past relevant work as a surgery scheduler is NOT a composite job, and there is no evidence before this Court, let alone the ALJ, that the vocational expert's testimony was unreliable. SSR 00-4p expressly allows the ALJ to rely upon a vocational expert's experience among reasonable bases for relying on evidence from vocational experts rather than the DOT[4] – in any event, the foregoing description of the surgery scheduler provided by the Plaintiff's testimony and the DOT description does not suggest any conflict requiring the ALJ, let alone the vocational expert, to abandon the DOT. The foregoing demonstrates that the ALJ complied with her duties under the pertinent legal standards, having determined that the Plaintiff remains capable of performing her past relevant work as a surgery scheduler "as generally performed." (Tr. at 99)

While the Plaintiff has asserted her disagreement with the ALJ's RFC determination and fourth step findings, and urges this Court to adopt her view on these particular issues, that is essentially an impermissible re-weighing of the conflicting evidence of record: a court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The resulting RFC assessment concerning the Plaintiff's physical (and mental) impairments included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and

---

[4] See, SSR 00-4p, 2000 WL 1898704, at *2.

conclusions provided in the written decision. The ALJ also complied with the clear directives endorsed by the SSA to find that the Plaintiff remained capable of performing her past relevant work as a surgery scheduler as generally performed. It is clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** that the RFC assessment and the fourth step finding are supported by substantial evidence, and further **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

## **Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for an award of benefits or remand (ECF No. 8), **GRANT** the Commissioner's request to affirm the decision (ECF No. 9), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 28, 2025.



Omar J. Aboulhosn
United States Magistrate Judge